UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ARASH GHAYOORI,

    Petitioner,

v.

COBRA TRADING, INC.,

    Respondent.

COBRA TRADING, INC.,

    Counter Claimant,

v.

ARASH GHAYOORI,

    Counter Defendant.

C25-0021 TSZ

ORDER

THIS MATTER comes before the Court on petitioner and counter-defendant Arash Ghayoori's Petition to vacate the arbitration award (the "Award"), docket no. 1, respondent and counter-claimant Cobra Trading, Inc.'s counterclaim, *see* Answer and Counterclaim, docket no. 6, Cobra's opposition to the petition to vacate and motion to confirm ("Motion to Confirm") the Award, docket no. 8, Mr. Ghayoori's cross motion to

ORDER - 1

vacate the Award ("Cross Motion to Vacate"), docket no. 13, and Mr. Ghayoori's Motion for a More Definite Statement, docket no 15. Having reviewed all papers filed in support of, and in opposition to, the petition and motions, the Court enters the following order.

**Background**

Founded in 2004, Cobra operates as a retail broker providing customer service and trading tools to active stock and option traders—both institutional and retail. *See* Ex. C to Mot. to Confirm (docket no. 8-3).[1]

On or about July 6, 2021, Mr. Ghayoori created a margin trading account with Cobra, which allowed him to trade on credit. *See* Ghayoori Decl. at ¶ 3 (docket no. 14); *see also* Ex. C to Mot. to Confirm at 48–49 (docket no. 8-3). On his application for the account, Mr. Ghayoori indicated that his investment objectives included "Trading, Speculation, Growth" and "Income," he wrote "Aggressive" as his risk tolerance, and he provided several addresses, including his physical addresses in California and Vancouver, British Columbia, and his brother's physical address. *See* Ghayoori Decl. at ¶ 3 (docket no. 14); *see also* Ex. E to Mot. to Confirm at 68 (docket no. 8-5). In connection with establishing a margin account with Cobra, Mr. Ghayoori agreed to the following:

> You can lose more funds than you deposit in the margin account – A decline in the value of securities that are purchased on margin may require you to provide additional funds to the firm that has made the loan to avoid the forced sale of those securities or other securities in your account. The firm can force the sale of securities in your account – If the equity in your account falls below the maintenance margin requirements under the law or the firm's

---

[1] The Court notes that exhibits filed by Cobra in support of its Motion to Confirm include declarations executed under penalty of perjury pursuant to 28 U.S.C. § 1746. Pursuant to this statute, these "unsworn declarations" are admissible and entitled to evidentiary weight.

ORDER - 2

higher "house" requirements, the firm can sell the securities in your account to cover the margin deficiency. You also will be responsible for any shortfall in the account after such a sale. The firm can sell your securities without contacting you – Some investors mistakenly believe that a firm must contact them for a margin call to be valid, and that the firm cannot liquidate securities in their accounts to meet the call unless the firm has contacted them first. This is not the case.

*See* Ex. B to Mot. to Confirm at 6 (docket no. 8-2).

On November 7, 2023, Mr. Ghayoori's account reflected a negative balance of $353,913.50 as a result of the trading activity and fund withdrawal the day prior.[2] *See* Ex. B to Mot. to Confirm at 5 (docket no. 8-2). The parties dispute, however, whether the trading that occurred on November 6, 2023, was authorized by Mr. Ghayoori. Cobra contends that on that date, Mr. Ghayoori "shorted" the stock of MSP Recovery, Inc. by borrowing shares and selling them to buyers at market price, as he anticipated a decline in value. *See* Ex. C to Mot. to Confirm at 54, 70 (docket no. 8-3). Instead, the stock price rose, and Mr. Ghayoori's positions incurred substantial losses. *See* Ex. B to Mot. to Confirm at 69 (docket no. 8-2). Cobra asserts that it was required to cover the growing debt by liquidating Mr. Ghayoori's margin account. *See* Ex. C to Mot. to Confirm at 70 (docket no. 8-3). During the time the trades were being processed, Cobra contends that Mr. Ghayoori represented he needed to immediately wire $313,000.00 for a real estate transaction, and Cobra staff approved the transfer. *See* Ex. D to Mot. to Confirm (docket no. 8-4). As a result of the trading losses and the withdrawal, Cobra states that

---

[2] Mr. Ghayoori maintains that his account should reflect a balance of $30,000.00—the amount that would have remained following his request for a wire transfer—as he denies having traded on November 6, 2023. *See* Ghayoori Decl. at ¶ 9 (docket no. 14).

ORDER - 3

Mr. Ghayoori's account balance reflected a negative $353,913.50. *See* Ex. E to Mot. to Confirm at 86 (docket no. 8-5). On or about November 6, 2023, Mr. Ghayoori retained an attorney who spoke with Cobra concerning this dispute. *See* Ex. B to Mot. to Confirm at 4 (docket no. 8-2). The attorney no longer represented Mr. Ghayoori as of November 9, 2023. *See* Ex. D to Mot. to Confirm at 4 (docket no. 8-4).

Mr. Ghayoori denies that he authorized any trades on November 6, 2023. *See* Ghayoori Decl. at ¶¶ 5, 7 (docket no. 14). He maintains that, prior to learning of the trades, he requested a wire transfer, which Cobra staff approved. *See id.* at ¶¶ 4, 6. Upon discovering the trading activity, Mr. Ghayoori states that he "immediately contacted Cobra to dispute them and assert that my account had been compromised." *Id.* at ¶ 8; *see also* Ex. F to Ghayoori Decl. (docket no. 14).

On November 16, 2023, Mr. Ghayoori sent an email to the Chief Operating Officer of Cobra, Thomas Terry, stating the trades that occurred on November 6, 2023, on his account were "unauthorized," that he does "not have any responsibility for the negative account balance" as "it is the direct result of the unauthorized trading," that his "phone number is no longer in service," he has "moved to another part of the world," and "no longer live[s] in the U[nited] S[tates]." Ex. B to Mot. to Confirm at 4–5 (docket no. 8-2).

On or about December 27, 2023, Cobra initiated arbitration proceedings against Mr. Ghayoori through the Financial Industry Regulatory Authority ("FINRA") pursuant to the terms of the margin agreement. *See* Ex. C to Mot. to Confirm (docket no. 8-3). Cobra initially requested Dallas, Texas, as the venue for the arbitration proceedings

ORDER - 4

because it is headquartered in the Dallas area and Mr. Ghayoori entered agreements governed by Texas law with a Dallas forum selection provision. *See id.* Thereafter, pursuant to FINRA Rule 12213, FINRA designated Seattle, Washington, as the arbitration location, because the last known physical address of Mr. Ghayoori was in Vancouver, British Columbia, and Seattle is the closest venue to that location. *See* Ex. C to Mot. to Confirm at 24 (docket no. 8-3).

On January 3, 2024, FINRA mailed copies of the statement of the arbitration claim (the "Statement of Claim") and related arbitration documents to both physical addresses Cobra maintained on file for Mr. Ghayoori, but the mailings were returned as undelivered. *See* Exs. C & E to Mot. to Confirm (docket nos. 8-3 & 8-5). On January 24, 2024, Cobra's counsel served the Statement of Claim and related documents on Mr. Ghayoori via the FINRA Dispute Resolution ("DR") Portal.[3] *See* Ex. C to Mot. to Confirm at 4 (docket no. 8-3). That same day, Cobra also emailed the materials to the same address Mr. Ghayoori used to open his account and correspond with Cobra. *See id.* at 8. Cobra copied Mr. Ghayoori's former attorney on the email, who acknowledged receipt but did not forward the materials to Mr. Ghayoori. *See* Ex. D to Mot. to Confirm at 4 (docket no. 8-4). The legal assistant with Cobra's counsel who sent the email to Mr. Ghayoori confirmed in an affidavit that the email did not "bounce-back," and that

---

[3] The FINRA Dispute Resolution Portal is a secure online system that parties use to file, serve, and access documents in arbitration proceedings. *See* FINRA, Dispute Resolution Portal, https://www.finra.org/arbitration-mediation/rules-case-resources/dr-portal (last visited May 14, 2025).

ORDER - 5

1  Cobra's IT department verified successful delivery. Ex. E to Mot. to Confirm (docket
2  no. 8-5).
3      On May 6, 2024, Cobra filed a Motion for Determination of Service with the
4  FINRA panel, requesting that it issue an order finding that service of the Statement of
5  Claim and all other documents was effective, and that Mr. Ghayoori has actual notice of
6  the proceedings and the claims against him. *See* Ex. E to Mot. to Confirm (docket
7  no. 8-5). On May 9, 2024, Cobra filed a notice with the chairperson of FINRA, stating
8  that it attempted to serve the documents relating to the Motion for Determination of
9  Service to Mr. Ghayoori via his email address on file, but delivery was unsuccessful. *See*
10 Ex. F to Mot. to Confirm (docket no. 8-6). On June 6, 2024, the FINRA panel granted the
11 Motion for Determination of Service and found that Cobra's service of the Statement of
12 Claim and other documents was "adequate, effective, and in compliance with [FINRA]
13 Rule 12300," and as a result, the arbitration "matter may proceed accordingly." Ex. G to
14 Mot. to Confirm (docket no. 8-7).
15     Despite the ruling in its favor, in August 2024, Cobra's counsel retained King
16 International Advisory Group, Inc. ("KIAG"), an investigative agency, to locate
17 Mr. Ghayoori and attempt to personally serve him with arbitration proceeding
18 documents. *See* Ex. H to Mot. to Confirm (docket no. 8-8). Investigators at KIAG
19 conducted a background research report and found evidence of a physical address in
20 Toronto, Ontario, belonging to Mr. Ghayoori. *Id.* Two KIAG investigators visited that
21 address on two separate occasions prior to the arbitration hearing to personally serve
22 Mr. Ghayoori, but both attempts were unsuccessful. *Id.*
23

ORDER - 6

In or about November 2024, the FINRA panel conducted the arbitration proceedings, and in December 2024, it issued the Award in Cobra's favor in the amount of $353,913.50, plus interest and costs. *See* Exs. I & J to Mot. to Confirm (docket nos. 8-9 & 8-10). Mr. Ghayoori did not participate in the arbitration proceedings and discovered the Award while checking FINRA's online database on December 9, 2024. Ghayoori Decl. at ¶ 10 (docket no. 14). He asserts that Cobra's only attempt to serve him was via the email address he used to create the margin account. *Id.* That email address was "deactivated at [his] request in November 2023," before arbitration proceedings were initiated. *Id.*

On January 6, 2025, Mr. Ghayoori filed a petition against Cobra pursuant to the Federal Arbitration Act, ("FAA"), 9 U.S.C. § 10, seeking vacatur of the award under §§ 10(a)(3) and (a)(4), alleging that the arbitrators exceeded their authority and that the Award was procured through improper means because he did not receive adequate notice and the hearing was conducted at an improper venue. *See* Petition (docket no. 1). On February 3, 2025, Cobra filed its answer to the petition and a counterclaim against Mr. Ghayoori, *see* Answer and Counterclaim (docket no. 6), requesting confirmation of the Award under the FAA, 9 U.S.C. § 9, and additionally filed the Motion to Confirm the Award, *see* Mot. to Confirm (docket no. 8). On February 20, 2025, Mr. Ghayoori filed the Cross Motion to Vacate the Award, in which he reiterated the arguments made in the petition, and requested a continuance due to an unspecified scheduling conflict and to conduct discovery that would allegedly result in evidence supporting vacating the Award.

ORDER - 7

*See* Cross Motion to Vacate (docket no. 13).[4] In substance, Mr. Ghayoori seeks vacatur of the Award or a continuance, while Cobra requests confirmation of the Award.

**Discussion**

      A.    **Judicial Review of Arbitration Awards**

Under the FAA, 9 U.S.C. § 9, courts must confirm an arbitration award unless one of the limited grounds for vacatur under 9 U.S.C. § 10 is established. *See Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 997 (9th Cir. 2003) (en banc). The Ninth Circuit has emphasized that "[n]either erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award under the statute." *Id.* at 994.

      B.    **Arbitrator Misconduct**

Mr. Ghayoori contends that the Award should be vacated under 9 U.S.C. § 10(a)(3) on two grounds: (1) he did not receive adequate notice of the arbitration proceedings, and (2) the arbitration was conducted in an improper venue. Petition at 5–6 (docket no. 1). Cobra argues that both notice and venue were proper under the FINRA rules and applicable law. Mot. to Confirm at 8–9 (docket no. 8). The Court addresses the notice and venue arguments.

---

[4] On February 20, 2025, Mr. Ghayoori filed a motion for a more definite statement, docket no. 15, requesting that the Court order Cobra to provide greater specificity regarding the fraud allegations in its counterclaim in support of its request to confirm the Award.

ORDER - 8

**1.     Notice**

Under 9 U.S.C. § 10(a)(3), a court may vacate an arbitration award if the arbitrators were guilty of misconduct or "misbehavior by which the rights of any party have been prejudiced." Mr. Ghayoori contends that service of the Statement of Claim and arbitration documents was deficient under FINRA Rules 12300(a), 12302(c)(2), & 13300, and constitutional due process. *See* Petition at 5 (docket no. 1); Cross Mot. to Vacate at 11–15 (docket no. 13). He argues that Cobra served the arbitration documents to a "defunct" email address and failed to serve him via other available means, such as his mailing addresses, alternate email accounts, or his brother's address. As a result, he contends, he did not learn of the arbitration until after the Award was issued and was unable to meaningfully participate. Cross Mot. to Vacate at 6, 12, 14–15 (docket no. 13). Cobra argues that service was proper under both the FINRA Rules and due process, and that the Court should defer to the FINRA panel's order finding service procedurally sufficient. *See* Mot. to Confirm at 8–9 (docket no. 8); Resp. to Mot. at 7–10 (docket no. 17).

The Court agrees that Cobra's methods of service complied with the FINRA Rules. Under FINRA Rule 12300(a), parties are required to use the FINRA DR Portal to serve statements of claim and other documents but are permitted to "use other means of filing or service" if an exception applies or "in other extraordinary circumstances." In accordance with Rule 12300(a), Cobra's counsel served the Statement of Claim and the arbitration documents via the FINRA DR Portal, and Cobra served the same documents by email to the address Mr. Ghayoori used to open his margin account and correspond

ORDER - 9

with Cobra as recently as November 2023, shortly before Cobra initiated arbitration proceedings. *See* Exs. B, C & E to Mot. to Confirm (docket nos. 8-2, 8-3 & 8-5). Under Rule 12302(c)(2), a FINRA Director is required to serve the Statement of Claim and related documents. The term "Director" includes "FINRA staff to whom the Director has delegated authority." FINRA Rule 12100(m); *see also* FINRA Rule 13103(a) ("The Director may delegate his or her duties when it is appropriate, unless the Code provides otherwise."). Here, a FINRA case administrator mailed a copy of the Statement of Claim and other arbitration documents to both physical addresses Cobra maintained on file for Mr. Ghayoori. *See* Ex. E to Mot. to Confirm (docket no. 8-5). Absent evidence to the contrary, the Court finds such service procedurally proper. Finally, Mr. Ghayoori's reliance on Rule 13300 is misplaced because this Rule applies only to industry disputes, and this matter involves a customer claim.

      Cobra's service also complies with constitutional due process. "Due process requires notice reasonably calculated, under all the circumstances, to apprise parties of the pendency of the action and afford them an opportunity to present their objections." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010) (internal quotation marks omitted). "Due process does not require actual notice." *Id.* (quoting *Jones v. Flowers*, 547 U.S. 220, 225 (2006) (cleaned up)). Although Mr. Ghayoori claims that the documents were sent to a "defunct" email address, the email did not bounce, and Cobra's IT department confirmed successful delivery. *See* Ex. E to Mot. to Confirm (docket no. 8-5). Cobra also sent the materials to Mr. Ghayoori's former attorney, who acknowledged receipt. *See* Ex. D to Mot. to Confirm (docket no. 8-4). Mr. Ghayoori

ORDER - 10

> ORDERED claimant's motion for Determination of Service is granted. This matter may proceed accordingly.

Ex. G (FINRA Order) to Mot. to Confirm (docket no. 8-7).

Nothing in the record suggests that the panel's ruling was the result of misconduct or legal error. The Court finds no basis to disturb the panel's determination, and vacatur is not warranted based on inadequate notice under § 10(a)(3).

### 2. Venue

Mr. Ghayoori also argues that the Award should be vacated under § 10(a)(3) because the venue location, Seattle, Washington, was improper and prejudiced his rights. *See* Petition at 6 (docket no. 1); *see also* Cross Mot. to Vacate at 9–11 (docket no. 13). Cobra acknowledges that it initially requested Dallas, Texas, as the hearing location, but argues that Seattle was a proper venue pursuant to FINRA Rule 12213(a) because Mr. Ghayoori's last known residence was in Vancouver, British Columbia. Mot. to Confirm at 4 (docket no. 8).

Mr. Ghayoori fails to articulate any prejudice or provide any authority supporting his objection to venue. According to FINRA Rule 12213(a)(1), the FINRA Director selects the arbitration hearing location, and generally "will select the hearing location closest to the customer's residence at the time" the events occurred that gave rise to the dispute. When Mr. Ghayoori opened his margin account with Cobra, he provided two physical addresses for himself, one in Studio City, California, and one in Vancouver, British Columbia. *See* Ex. C to Mot. to Confirm (docket no. 8-3). Because Mr. Ghayoori resided in Vancouver during the relevant time period, FINRA selected Seattle, not Dallas,

ORDER - 12

as the closest designated hearing location in accordance with Rule 12213(a)(1). *See* Ex. K (docket no. 8-11). Mr. Ghayoori has not demonstrated that this selection constitutes "misbehavior by which the rights of any party have been prejudiced."[5] *See* 9 U.S.C. 10(a)(3). Accordingly, the Court concludes that venue was proper, and the arbitrators did not engage in misconduct. Vacatur is not warranted under § 10(a)(3) for improper venue.[6]

### C. Manifest Disregard of the Law

Mr. Ghayoori also alleges that the Award should be vacated pursuant to 9 U.S.C. § 10(a)(4). *See* Petition at ¶¶ 24-33 (docket no. 1). He contends that the panel lacked jurisdiction to proceed because service of the Statement of Claim was defective, venue was improper, that he was deprived of the opportunity to participate in the arbitration and the selection of the arbitrator, and that the panel proceeded with the arbitration despite knowing service had allegedly failed. *Id.* These alleged procedural defects, he argues, render the Award unenforceable under § 10(a)(4). *Id.* Under 9 U.S.C. § 10(a)(4), a court may vacate an arbitration award if "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." *See Bosack v. Soward*, 586 F.3d 1096, 1104 (9th Cir. 2009) (quoting *Comedy Club, Inc. v. Improv W. Associates*, 553 F.3d 1277, 1290 (9th Cir. 2009) (citing *Kyocera*, 341 F.3d at 997)) (explaining that vacatur may be warranted

---

[5] The Court notes that the arbitration hearing was conducted by videoconference. *See* Ex. J to Mot. to Confirm (docket no. 8-10).

[6] The Court also notes that improper venue is not an enumerated ground for vacatur under the Federal Arbitration Act. *See* 9 U.S.C. § 10(a).

ORDER - 13

if the arbitrators acted in a manner that was "completely irrational" or in "manifest disregard of the law."). Indeed, there "must be some evidence in the record, other than the result, that the arbitrators were aware of the law and intentionally disregarded it." *Bosack*, 586 F.3d at 1104. The grounds for review are "extremely limited." *Kyocera*, 341 F.3d at 998.

Here, Mr. Ghayoori makes no showing that the FINRA panel acted irrationally or intentionally disregarded governing law. The record reflects that the panel was duly appointed pursuant to the parties' agreement and the FINRA Rules, and that it conducted proceedings in which it considered evidence, admitted exhibits, and held hearings before issuing the Award.

Accordingly, the Court concludes that Mr. Ghayoori has not shown that the arbitrators exceeded their powers or manifestly disregarded the law. Vacatur is not warranted under § 10(a).

D.  **Mr. Ghayoori's Remaining Arguments in the Cross Motion to Vacate**

Mr. Ghayoori raises several additional arguments in support of vacatur, none of which have merit.

First, Mr. Ghayoori contends that the Award constitutes a default judgment and is therefore unenforceable. *See* Cross Mot. to Vacate at 18 (docket no. 13). This argument is contradicted by the record. The record shows that the FINRA panel admitted evidence and issued a reasoned award. The absence of Mr. Ghayoori's participation in the proceedings does not render the Award ineffective.

ORDER - 14

Second, Mr. Ghayoori argues that Cobra is barred from seeking confirmation based on the doctrine of res judicata and the risk of double recovery. *See* Cross Mot. to Vacate at 21 (docket no. 13). This argument is misplaced. Cobra is not attempting to relitigate claims; it seeks judicial confirmation of the existing Award pursuant to 9 U.S.C. § 9. *See* Mot. to Confirm (docket no. 8).

Third, Mr. Ghayoori asserts that Cobra waived its right to rely on the Award by asserting a counterclaim in this action. *See* Cross Mot. to Vacate at 22 (docket no. 13). This assertion is also without merit. The counterclaim merely reiterates the request for confirmation and incorporates the arbitration record. *See* Answer and Counterclaim at 20–25 (docket no. 6). It does not constitute waiver or an attempt to pursue duplicative relief.

Fourth, Mr. Ghayoori argues the FINRA panel made "cumulative errors" and that "policy considerations" support vacating the Award. *See* Cross Mot. to Vacate at 15–16 (docket no. 13). He contends that the Court, by affirming the Award, "would undermine both the letter and spirit of the Federal Arbitration Act" and "encourage[] forum-shopping through selection of arbitration venues with no discernible connection to the dispute." *Id.* Vacating the Award, Mr. Ghayoori argues, would "preserve the integrity of the arbitration process." *Id.* at 16. The Court finds no support in the record for these assertions. As discussed above, the Court's review of arbitral decisions is extremely limited under the FAA, and there is no evidence of misconduct, unfairness, or misapplication of governing rules. To the extent Mr. Ghayoori invokes general concerns

ORDER - 15

about fairness and transparency, those unsupported arguments do not provide a basis for vacatur under the FAA.

Finally, Mr. Ghayoori also seeks a 60-day continuance, citing both an unspecified scheduling conflict and a desire to conduct discovery related to the arbitration. *See* Cross Mot. to Vacate at 23–24 (docket no. 13). Mr. Ghayoori fails to identify any specific scheduling conflict or explain how it prevents him from responding to the legal issues presented, all of which are briefed and turn on the existing record. As to discovery, because the Court independently concludes that both service and venue were proper, and that the panel neither exceeded its authority nor acted in manifest disregard of the law, discovery is unnecessary. Mr. Ghayoori identifies no facts that would alter these findings. Accordingly, his request for a continuance is DENIED.[7]

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1)    Cobra's Motion to Confirm the Arbitration Award, docket no. 8, is GRANTED;

---

[7] Cobra's counterclaim, *see* Answer and Counterclaim at 20–25 (docket no. 6), styled as a request for confirmation of the Award, is fully resolved. Although the counterclaim includes allegations of fraudulent conduct, those allegations are offered as factual context for the arbitration proceedings and are not asserted as a separate cause of action. *See id.* at 12–13. Because the Court confirms the Award, the counterclaim requires no further adjudication. To the extent Cobra seeks any additional relief through the counterclaim, the counterclaim is DENIED as moot. Mr. Ghayoori's Motion for a More Definite Statement, docket no. 15, which challenges the sufficiency of Cobra's fraud allegations, is likewise DENIED as moot. Cobra's counterclaim, *see* docket no. 6, is DENIED as moot; Mr. Ghayoori's Cross Motion to Vacate the Arbitration Award, docket no. 13, is DENIED, and Mr. Ghayoori's Motion for a More Definite Statement, docket no. 15, is DENIED as moot.

ORDER - 16

(2) Mr. Ghayoori's Petition to Vacate the Arbitration Award, docket no. 1, is DENIED;

(3) The Court hereby CONFIRMS the FINRA panel's Award; and

(4) The Clerk is directed to send a copy of this Order to all counsel of record, to enter judgment confirming the Award, and close this case.

IT IS SO ORDERED.

Dated this 28th day of May, 2025.

Thomas S. Zilly
United States District Judge

ORDER - 17